Opinion of the court delivered by
Judge Whyte.
In this case a judgment was rendered against the plaintiffin error, ,for the sum of ‡277 debt, and ‡373 damages and costs in the circuit court, and he prayed an appeal in the nature of a writ of error to this court, and further prayed, that the same might be granted to him without giving security, as in common cases, upon the ground that he was a poor person, and unable to give the security. The circuit court admitted him to take the oath required and prescribed by the act of assembly of 1821, ch. 22, sec. 2, “that he was not able to bear the expenses of the law suit he was about to carry up to the supreme court; and that he was justly entitled to be relieved against the said judgment then recovered against him,” which oath being made before the court, an appeal in the nature of a writ of error was granted him, to which grant the defendant excepted, and his exception was overruled. The cause was put on the docket by consent, and the question reserved,“whether, under the circumstances, the plaintiffin *122 error, Phillips, was entitled to an appeal in the nature of a writ of error,” which comes on to be argued upon a motion to dismiss the suit from the docket.
It was contended for the defendants in error, that the act of 1821, ch. 22, only applied to plaintiffs in the commencement of a suit, upon suing original writs at law, or writs of subpoena in equity; hut at furthest, would only extend to excuse the giving a prosecution bond for costs, under the act of 1807, ch. 19, sec. I, 2, and that said act would not extend to the suing out of writs of error, or obtaining appeals in the nature of writs of error, su-percedeas, &c. which require security to he given before the same are granted.
It is true, that this act says, that the clerks of the different courts of the state shall, on application of any poor person, who shall take the oath prescribed by the act, issue any original writ or writs, of subpoena, according to the nature of his case, either inlaw or equity, without demanding security or pay or reward for 'the same. But its object is not limited to these particulars; its views are more enlarged,and its benefits more comprehensive, which appear not only by the declaration of the caption “to help poor persons in obtaining their just rights;” but from the substantive, enacting clauses themselves. Section 3 makes it the duty of the court, upon the return of such writs, to appoint counsel, able and learned in the law, to attend to, and manage, such suit and suits, for such poor persons, without fee or reward for the same. It gives them a further privilege which the law extends to no other suitors or their witnesses, and permits the witnesses, often poor, who may be desirous of being discharged from further attendance, to have their depositions taken.
This act of ours was preceded between three and four centuries ago, by the 11th of Henry 7th, ch. 12, on the same subject, more copious in expression, but not more .extensive in effect. It says in the language of those times-; “It is enacted, praying the Commons in this present parliament assembled, the King willeth and intend-eth, indifferent justice to be administered according to his *123 common laws, to all bis subjects as well to the poor as to the rich, which poor subjects be not of ability, nor power to sue according to the laws of this land, for the redress of injuries, and wrongs, to them daily done, as well concerning their persons and their inheritances as other cause for remedy,” &c.
The construction of this statute, by the courts, guided by the spirit of the common law, will give us some assistance in placing the proper estimate upon the objection of the defendants in error, to the sustaining this cause in this court, namely, that the aid of the act is to be sought, and had, at the commencement of the suit in the first court, before the clerk, and previous to the issuing writs, the argu-mentof the defendantsin error, foundingitself on the words of the first section of the act. The English statute has the same words verbatim as our act; to wit, “writ or writs original, or writs of subpoena;” the expression of it is, that every poor person shall have, from the Chancellor, “a writ or writs, original, and writs of subpeena, nothing paying to your highness for the seals of the same,” and what is the construction of the English courts upon this act of 11th of Henry 7, ch. 12? Is it restricted to steps taken at the commencement of the suit, or must the declaration of pauperism be then only made, and the relief to be granted then only obtained or authorized? No, the construction thereon has been, that the courts may admit persons, to sue in forma •pauperis at any time. Langlery vs. Blackerby; (Andr. 306.)
This being the common law construction of a statute in favor of the poor, in a place where, in other respects, wealth and property have such superior influence, what success to this objection could be expected at this day, when the rights of man are generally better understood, and in this place, where the nature of our government, the principles held forth in our constitution, the general tenor of our laws, and our justly extolled liberty and privileges (in which, with our sister States of the Union we transcend all other civilized political societies,) all declare, exhibit, and proclaim those rights. Can, I say, *124 such premises comport with the limited and restricted construction now offered to he imposed on this remedial act? to wit, to confine its effect to the county court, or to that court in which the suit is first brought, denying the p00r? jn examination of his case in the circuit and supreme court, the common and usual privilege, and right allowed to the rich? It cannot be. It certainly must have been the intention of the legislature in this act, to place the poor on the same footing with the rich, in respect to the remedies given by the courts of justice, for the redressing their injuries and sustaining their rights, and to extend to them, without money, and without price, an equal participation in the benefits of the laws of the land, with those whose more favored'situations in society could at pleasure command those benefits.
The statute of 11th of Henry 7, ch. 12, extends to suits in equity as well as to actions at law, expressly in terms as our act; and the court of Chancery in its construction entertains the same liberal principles in favor of the poor as the courts of law have done. In a very recent case there, it was held, that an appeal may be prosecuted in forma pauperis. The Lord Chancellor said, it was a very singular proposition that a pauper could not appeal; he could not see whjr, because a party was poor, the courts should not set itself right; case of Bland vs. Lamb (2, Jac. and Walk. 402.)
It is the opinion therefore of the whole court, that the poor, under this act, are placed on the same footing, in respect to the suit, and that the litigation of their rights in the court of justice, as if they had property. But that the benefit of the act may be withdrawn from them, and they become disfranchised, by the accession of property, by their fraud, or by other misconduct.
Motion refused.